IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| NATIONAL ELECTRICAL BENEFIT FUND | * | |
| Plaintiff, | * | |
| v. | * | Case No.: TDC-17-574 |
| POWERSOURCE TELECOM, INC. | * | |
| Defendant. | * | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Entry of Default Judgment (the "Motion") filed by the Trustees of the National Electrical Benefit Fund ("Plaintiff" or "NEBF"). ECF No. 10. Plaintiff is the trustee of a multiemployer employee pension benefit plan, as defined by Section 3(2) of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1002(2); ECF No. 1, p. 2. On February 28, 2017, Plaintiff brought this action against Powersource Telecom, Inc. ("Defendant") under Sections 502 and 515 of ERISA and Section 301 of the Taft-Hartley Act. ECF No. 1, p. 1–2; 29 U.S.C. § 185; 29 U.S.C. § 1132; 29 U.S.C. § 1145. Plaintiff alleges that Defendant breached the Collective Bargaining Agreements ("the Agreements") between Defendant and International Brotherhood of Electrical Workers Local Union 1547 by failing to submit contributions to Plaintiff on behalf of the employees covered by the Agreements. ECF No. 1, p. 3. Defendant's time to file an Answer expired on March 24, 2017. ECF No. 10, p. 1. The Clerk of the Court entered default against Defendant on

1

March 28, 2017. ECF No. 10, p.1. Pursuant to 28 U.S.C. Section 636 and Local Rules 301 and 302, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation concerning default judgment and/or damages. For the reasons stated herein, I recommend that the Court DENY the Motion without prejudice.

## I. Factual and Procedural Background

Plaintiff is a multiemployer employee pension benefit plan, as defined by Section 3(2) of ERISA, established by an agreement between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA"). 29 U.S.C. § 1002(3); ECF No. 1, p. 2. Employers participate in the NEBF pursuant to the Agreements with either the IBEW or its local unions. EFC No. 1, p. 2. Plaintiff is authorized by the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund (the "Trust Agreement") to "take all necessary actions to recover delinquent contributions," including recovering interest, liquidated damages, audit fees, and all costs and attorneys' fees relating to the delinquent contribution(s). *Id.* at 3.

Defendant is a signatory to the Agreements with IBEW Local Union 1547, which serves as the collective bargaining representative of Defendant's employees. Pursuant to the Agreements, Defendant is required to submit contributions on behalf of all covered employees. *Id.* at 2–3. As of February 28, 2017, Defendant has allegedly failed to make payments totaling $5,404.90 to the NEBF for the period of December 2014 through April 2016. *Id.* at 3.

## II. Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, after entry of default, the plaintiff's complaint does not specify a "sum

certain" amount of damages, the Court may enter a default judgment against the defendant pursuant to Rule 55(b)(2).  When considering a motion for default judgment, the Court accepts as true all well-pleaded factual allegations in the complaint as to liability.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted).  However, the Court must "make an independent determination of the sum to be awarded" because "[a] default does not [automatically] establish liability."  10A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2688, n.6 (4th ed. 2001); *see also Ryan*, 253 F.3d at 780–81 (holding that acceptance of facts pled by the non-defaulting party "does not necessarily entitle the [party] to the relief sought").

The Fourth Circuit has a "strong policy that cases be decided on the merits."  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).  However, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party."  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the plaintiff establishes liability, the Court then turns to the determination of damages.  Fed. Prac. & Proc. Civ. § 2688, n.6 (4th ed.).  In determining damages, the Court cannot accept Plaintiff's factual allegations as true and must make an independent determination.  *See Lawbaugh*, 359 F. Supp. 2d at 422.  Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so.  *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citing *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no

need to convene a formal evidentiary hearing on the issue of damages" when determining damages associated with default judgment because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought)); *DirecTV, Inc. v. Yancey*, No. Civ. A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits" and therefore no evidentiary hearing was necessary). The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. *See, e.g., Monge*, 751 F. Supp. 2d at 795 (citing cases in which damages were awarded after a default judgment and without a hearing, based on affidavits, printouts, invoices, or other documentary evidence).

### III. Discussion

Plaintiff served its Complaint on Defendant on March 3, 2017, yet Defendant has failed to plead or otherwise assert a defense. ECF No. 10, p. 1. Therefore, the Court deems all of Plaintiff's factual allegations in the Complaint not pertaining to damages admitted. *See* Fed. R. Civ. P. 8(b)(6); *Ryan* 253 F.3d at 780. Plaintiff's Motion was filed on April 6, 2017, and Defendant has still not responded. It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because the defendant has been properly served with the complaint and did not respond, even after the plaintiffs tried repeatedly to contact him); *Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment was appropriate because the defendant was "unresponsive for more than a year" after denial of his motion to dismiss, despite being served with the plaintiff's motions for entry of default and default judgment).

For the reasons stated below, it is my recommendation that Plaintiff be denied default judgment without prejudice. However, if Plaintiff appropriately cures the deficiencies in the Motion, it is my recommendation that Plaintiff be granted default judgment. In determining damages, I find that no evidentiary hearing is necessary and instead reliance is appropriate on the declarations and other evidence of record, such as a delinquency report and the itemization of legal fees and costs, to determine the appropriate sum.

### A. Deficient Documents

I recommend that the Motion be denied without prejudice because the Court does not have reliable documents on which to base its analysis. Plaintiff has submitted a partial, unsigned copy of the Agreements in conjunction with an affidavit by the Director of the Audit and Delinquency Department of the NEBF. ECF No. 10-2. Plaintiff relies solely on the Agreements as the basis for the terms that Defendant allegedly agreed to and has subsequently broken, giving rise to this suit. ECF No. 1, p. 2–3. Without the dated signatures of Defendant and Plaintiff on these documents, however, the unsigned Agreements are not acceptable evidence that the parties have agreed to be bound to the terms within each document. The Court cannot appropriately deem Defendant to have "agreed" to any of the terms in those documents as discussed in this opinion. Without proof of Defendant's assent to the terms, Plaintiff's case has no foundation.

I recommend that the Court gives Plaintiff time to cure these deficiencies and provide fully executed copies of the Agreements. If done, I recommend the granting of the Motion for the reasons discussed below.

### B. Default Judgment

In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in a complaint as to liability. *Ryan*, 253 F.3d at 780. Nevertheless, the Court must determine "whether the well-pleaded allegations . . . support the relief sought in this

action." *Id.* Plaintiff's allegation of unpaid contributions supports its cause of action under ERISA, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Moreover, where a pension plan prevails in an ERISA action, a court shall award: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). The Supreme Court has found that these sections of ERISA are intended to "provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Laborers' Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). The Fourth Circuit has likewise found that in an action based on Section 515 of ERISA, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) (citation omitted).

Under the Agreements, it appears that Defendant agreed to contribute three percent (3%) of the gross labor payroll accrued by Defendant's covered employees to the NEBF. ECF No. 10-2, p. 6. In the event of missed payments, the Agreements dictate that Defendant must pay the NEBF the following:

(1) All costs and expenses associated with any audits;
(2) Liquidated damages in the amount up to 20% of the missed payment;
(3) Lost interest from the missed payment at 10% of the annual rate, compounded monthly throughout the period of delinquency; and
(4) Costs and attorneys' fees.

6

*Id.* at 11. Based on the content found within the Agreements and associated exhibits, it would appear that Plaintiff's well-pleaded factual allegations support the relief requested. Upon Plaintiff's submission of appropriately executed copies of the Agreements, the Court may rely on the Agreements as supporting Plaintiff's allegations.

### C. Damages

Plaintiff's Motion asserts that Defendant owes:

a) $5,404.90 in past-due contributions to the NEBF;
b) $20.00 in bank fees due to Defendant's returned check;
c) $871.34 in interest assessed at 10% per annum, compounded monthly;
d) $1,539.52 in liquidated damages; and
e) $1,611.20 in legal fees and expenses.

ECF No. 10-2, p. 1–2. In total, Plaintiff asks for $9,446.96. ECF No. 10-2, p. 2.

In support of its request for delinquent contributions, Plaintiff submits the declaration of Angel Losquadro, Director of the Audit and Delinquency Department of the NEBF. ECF No. 10-2. In support of its request for reasonable attorneys' fees and costs, Plaintiff's counsel Jennifer Bush Hawkins submits a declaration. ECF No. 10-1. The representations of both Mr. Losquadro and Ms. Hawkins appear to be adequate as to the contributions owed, interest due, and attorneys' fees and costs owed so as to make a hearing unnecessary. *See Monge*, 751 F. Supp. 2d at 795. The Court, however, should not award Plaintiff the full $9,446.96 it claims is owed because the liquidated damages calculation is incorrect. With the appropriate recalculations discussed below, the total amount to be awarded to Plaintiff is $8,998.42.

*a) Subsequent Past-Due Contributions and Returned Check Fees*

Plaintiff claims Defendant owes $5,404.90 for past due contributions to the NEBF for the months of December 2014 through April 2016. ECF No. 1, p. 3. These damages are supported by a delinquency report generated by the NEBF that details the monthly contribution owed, interest, and any payments made by Defendant during the period in question. ECF No. 10-2, p.

7

14; *see also* ECF No. 10-2, p. 1 (Losquadro Declaration confirming Defendant owes $5,404.90 for December 2014 through April 2016).

Plaintiff also claims that Defendant owes an additional $20.00 for a returned check bank fee caused by Defendant. ECF No. 1, p. 4. However, Plaintiff does not provide documentation or evidence that supports this cost. The undersigned recommends against accepting this unsupported representation. Once proper documentation is provided, I recommend that the Court award Plaintiff $5,424.90.

   *b) Accrued Interest*

Plaintiff alleges that Defendant owes $871.34 in interest assessed December 2014 through April 2017. ECF No. 10-2, p. 2. Under the Agreements, Plaintiff is entitled to interest on any unpaid contributions at a 10% annual rate compounded monthly throughout the delinquency. *Id.* at 11. ERISA allows for an award of interest on unpaid contributions "determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). Plaintiff outlines the interest on the amount owed in the NEBF Delinquency Report. ECF No. 10-2, p. 14. Thus, after reviewing the evidence of record, I recommend the Court award Plaintiff its requested amount of $871.34 in interest.

   *c)  Liquidated Damages*

Plaintiff alleges that Defendant owes $1,539.52 in liquidated damages. ECF No. 1, p. 3. Under ERISA, a prevailing plaintiff is entitled to "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid contributions] determined by the court." 29 U.S.C. § 1132(g)(2)(C)(ii). The Agreements state:

> In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the

> Covered Employer to make the required payment of contributions imposes additional burden and expense upon the Trustees in the collection thereof, in the administration of the NEBF, including but not limited to the communication with said Covered Employer, and, in addition thereto may cause a loss of benefits to Covered Employees.

ECF No. 10-2, p. 11. Based on the 20% liquidated damages rate, Losquadro alleges that Defendant owes Plaintiff $1,539.52 in liquidated damages. *Id.* at 2. The NEBF Delinquency Report shows that Defendant failed to make timely contributions in the amount of $7,697.60. *Id.* at 14. Defendant made two late payments totaling $2,292.70 in September and October 2015, which reduced the total outstanding amount to the $5,404.90 Plaintiff now seeks. *Id.* However, the liquidated damages allegedly owed are calculated as 20% of the overall untimely contributions of $7,697.60, whereas ERISA permits liquidated damages only on the unpaid contributions of $5,404.90. *See* 29 U.S.C. § 1132(g)(2)(C)(ii); *see also Trustees of Glaziers Local 963 Pension, Welfare, & Apprentice Funds v. Walker & Laberge Co.*, 619 F. Supp. 1402, 1405 (D. Md. 1985) (holding that untimely payments tendered prior to commencement of the suit "do not qualify as 'unpaid contributions'"). Therefore, Plaintiff is entitled only to 20% of $5,404.90, the unpaid contributions existing at the commencement of the suit, which totals $1,080.98 in liquidated damages.

    *d)    Attorneys' Fees and Costs*

Plaintiff alleges Defendant owes $550.00 in costs and $1,061.20 in attorneys' fees. ECF No. 10-1, p. 2–3. In an ERISA action, a district court may award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citing *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 245 (2010) (citation omitted)).

Courts use the lodestar calculation to determine reasonable attorneys' fees, which requires multiplying the number of reasonable hours expended by a reasonable rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit has endorsed a list of twelve factors, which aid a court in determining a reasonable fee. These factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 243–44 (adopting the twelve factors articulated by the Fifth Circuit in J*ohnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

A party seeking a fee award "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *See id.* at 244 (quoting *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). While Plaintiff has not provided information independent counsel affidavits regarding the local market rate, the Local Rules provide guidelines for determining an attorney's reasonable hourly rate in Maryland:

- a. Lawyers admitted to the bar for less than five (5) years: $150–225.
- b. Lawyers admitted to the bar for five (5) to eight (8) years: $165–300.
- c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225–350.
- d. Lawyers admitted to the bar for fifteen (15) years or more: $300–475.

Local Rules App. B, 2 (D. Md.). In the instant case, *Johnson* factors one and nine are most persuasive in evaluating Plaintiff's request for attorneys' fees. Factor one examines the time and effort Plaintiff's attorney spent preparing the Complaint and the Motion. Factor nine asks us to

evaluate the fees based on the experience of counsel because a more experience attorney is expected to perform more efficiently.  Plaintiff's counsel billed at an hourly rate of $379.00.  ECF No. 10-1 at 2.  Ms. Hawkins has been a licensed attorney since 1995, has been responsible for NEBF's ERISA collection proceedings since 1996, and has been a member of Potts-Dupre, Hawkins & Kramer since 2002.  *Id.* at 1–2.  The Local Rules advise that a reasonable hourly rate for an attorney admitted to the bar for fifteen or more years is $300.00 to $475.00.  Local Rule App. B, 3(d).  Ms. Hawkins' hourly rate of $379.00 falls within that reasonable range.

Plaintiff's counsel provided a detailed itemization of legal fees and costs.  ECF No. 10-1, p. 2–3.  The records show that Ms. Hawkins billed a total of 2.80 hours.  *Id.*  These hours are reasonable considering the amount of labor required to initiate the suit, to take the necessary procedural steps in moving forward for default judgment, and to prepare sufficient evidence in support of the damages requested.  Moreover, the requested legal costs in the amount of $400.00 for filing and $150.00 for server fees are appropriate.  Applying the lodestar method and the Local Rules to Plaintiff's request, I recommend that the Court ward Plaintiff $550.00 in costs and $1,061.20 in attorneys' fees.

## IV. Conclusion

Based on the foregoing, it is my recommendation that the Court DENY without prejudice Plaintiff's Motion for Default Judgment against Defendant.  I recommend that Plaintiff be given fourteen (14) days to correct the deficiencies in the Motion by providing the Court with: (1) a copy of the Collective Bargaining Agreements that have been signed and dated by both parties, and (2) a document supporting the $20.00 returned check fee incurred by Plaintiff.  If the

documents are provided, I recommend that the Court grant Plaintiff's Motion and enter judgment against Defendant for the awards enumerated above in the total amount of $8,998.42.


August 31, 2017                                    /s/
                                          Charles B. Day
                                          United States Magistrate Judge


CBD/xl/rqw